■ In the Matter of JUANITA MURRAY, Appellant, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Respondents. [16 NYS3d 242]—

Judgment, Supreme Court, New York County (Alexander W. Hunter, Jr., J.), entered October 1, 2013, denying the petition seeking, inter alia, to annul respondents' determination, dated September 19, 2012, which denied petitioner's appeal of an un-

---

satisfactory rating (U-rating) for the 2010-2011 school year, and granting respondents' motion to dismiss the proceeding brought pursuant to CPLR article 78, unanimously reversed, on the law, without costs, and the petition granted to the extent of annulling the U-rating.

Petitioner is a tenured school social worker employed by the Department of Education (DOE) (sued here as the Board of Education). She challenges a year-end overall U-rating issued by her principal, Robert Mercedes, in her Annual Professional Performance Review (APPR) for the 2010-2011 school year. The APPR, which she received on June 21, 2011, indicated unsatisfactory ratings in seven categories: attendance and punctuality, where Mercedes indicated that petitioner's attendance was "nearing limit"; professional attitude and professional growth, where he indicated that she lacked professional growth based on observation; resourcefulness and initiative, where he wrote that she lacked initiative and growth; analysis and interpretation of assessment data, where he indicated that she was unable to provide information upon which to base progress; translates assessment findings into educationally relevant goals and objectives, where he wrote that she was unable to assist students served; appropriateness and flexibility of counseling approaches, where he wrote that she was not flexible; and assessment reports, where he wrote that assessment reports were not submitted on time.

The documentation accompanying the APPR consisted of three letters written by Principal Mercedes to petitioner. The first, a May 31, 2011 letter, noted that petitioner had not provided Mercedes with previously requested particularized information concerning her work with, and the progress of, three of her students selected as a sample. The second, a June 7, 2011 letter, indicated that the documentation she subsequently submitted was unsatisfactory. The third, a June 15, 2011 letter, detailed the information previously requested and what petitioner had provided, and requested details of her specific strategies to improve her students' coping skills, the interventions she used that could be "qualitatively analyzed," and evidence that she conferenced with teachers and measured and tracked the success of her students. The June 15, 2011 letter concluded that because the documentation she provided was intended to be used "in lieu of a formal observation" (as had been set forth in a letter of May 10, 2011 included in the record on appeal but not as an attachment to the APPR), she would receive an unsatisfactory evaluation.

As was her right under the parties' collective bargaining

agreement, petitioner appealed her U-rating to the Chancellor of the DOE. A hearing took place in May 2012, at which both petitioner and Principal Mercedes testified. No transcript is included in the record; respondents instead rely on the report of the hearing issued by the Chancellor's Committee, which described the parties' arguments, made findings of fact, and recommended that the U-rating be sustained. The Committee concluded that petitioner had not countered respondents' claims that she took nine absences, all of which were before or after weekends and holidays, that she had been told at the beginning of the year that she was responsible for submitting logs but had not submitted any, that Principal Mercedes was unable to determine what techniques and strategies she was using or how often she met with any of the students, and that her claim that her work had been favorably reviewed by an in-discipline supervisor during the year was "hearsay," as she provided no documentary substantiation. The Committee also noted that the principal was accountable for evaluating all pedagogues in a school.

By letter dated September 19, 2012, petitioner was notified that the U-rating was sustained "as a consequence of a pattern of excessive absence (before and after weekends and holidays), and a lack of impact on student growth."

Pursuant to CPLR 7804, petitioner timely commenced this proceeding. Because she challenges the entirety of the U-rating, there was no need for her to have first filed a grievance based on her unsatisfactory rating for attendance and punctuality. The appeal to the Chancellor's Committee was her exclusive contractual and administrative remedy.

Petitioner establishes that in evaluating her performance, respondents did not adhere to their procedures or those provided in the parties' collective bargaining agreement. Special Circular No. 45, a memorandum issued by respondents in response to the mandate set forth in Commissioner of Education Regulations (8 NYCRR) § 100.2 (o), outlines the procedures for rating professional personnel, as does the related manual produced by the New York City Public Schools, entitled Rating Pedagogical Staff Members. Specifically, as a pedagogical employee, petitioner was to be given at least one full period of review during the school year by her principal, followed by a meeting with the principal to discuss her strengths and any areas in need of improvement. Additionally, as a social worker employed at a school, she should have been evaluated by the school principal in consultation with the in-discipline supervisor, in accordance with the collective bargaining agreement.

Respondents point to Principal Mercedes' May 15, 2013 affidavit wherein he states that he had in fact observed a group counseling session conducted by petitioner in April 2011 but felt that a single observation was insufficient to gauge the effectiveness of her work. However, he apparently he did not testify about the April observation at the Chancellor's Committee hearing, and petitioner disputes that it occurred. There is no documentation of the April observation, and Mercedes makes no claim to have spoken with petitioner following that observation.

It is also of great concern that an in-discipline supervisor did not critique petitioner's work as required by the collective bargaining agreement. Because there is no transcript of the Chancellor's Committee hearing, we have only petitioner's assertions, made in her underlying papers and again on appeal, that Principal Mercedes admitted to not having the experience or qualifications to evaluate petitioner without input from the in-discipline supervisor prior to asking petitioner for documents.[1] Mercedes' May 15, 2013 affidavit offers the additional statement, made in response to petitioner's claim that he did not collaborate with the in-discipline supervisor when making his year-end evaluation, that the supervisor position for his school was dissolved "after May 2010." There is nothing in the record to substantiate this claim. Presumably such a decision would have been made by persons with more authority than the principal. Moreover, such an action seemingly contradicts the provision in the collective bargaining agreement. In any event, left unstated is that it appears on the record that Mercedes apparently had never conferred with the in-discipline

---

1. Respondents cite *Batyreva v New York City Dept. of Educ.* (50 AD3d 283 [1st Dept 2008]), to argue that the Board of Education is not required to include a transcript of a Chancellor's Committee hearing when a proceeding is commenced under CPLR 7803 (3). *Batyreva* addressed whether that particular proceeding should have been brought pursuant to CPLR 7803 (4), requiring a substantial evidence analysis, and concluded that it was properly brought under the arbitrary and capricious standard (CPLR 7803 [3]). As to the hearing transcript, which had not been included in the record, we noted that the petitioner had not "demonstrated that a full transcript of the hearing before the Chancellor's Committee . . . was unavailable upon request" (*Batyreva* at 283-284). However, the evidence in *Batyreva* included eleven unsatisfactory classroom evaluation reports over the course of two years, and there was no question that the administrative decision to uphold the U-ratings was not arbitrary and capricious. Here, in contrast, while respondents have provided a litany of petitioner's failings, the issue is whether petitioner had notice of the complaints, or was in essence blindsided at the end of the school year. The hearing transcript might have shed some light on this question, as well as on the issue of Mercedes's alleged admission that he lacked the competence to evaluate social workers.

supervisor about petitioner's work prior to the dissolution of the supervisor's position.

There is no evidence that petitioner was notified before the end of the school year in June 2011 that her work was considered unsatisfactory. Although Principal Mercedes testified at the Chancellor's Committee hearing that petitioner was told to keep and be prepared to submit logs of her work, and that she always stated that they were unavailable, there is no indication that she was advised that this was unacceptable and would result in an unsatisfactory evaluation. Mercedes testified that teachers complained they were unable to discuss their students with petitioner, but there is nothing to show petitioner was aware of that criticism prior to the annual performance review, or that she was directed to change her practices. Petitioner was also apparently not cautioned about her absences prior to June 2011, as the only letter sent to her concerning her attendance, oddly not included as part of the APPR, is dated June 2011.

The record is clear that petitioner was deprived of her substantial rights in the review process culminating in her U-rating, when compared with, for instance, *Matter of Cohn v Board of Educ. of the City Sch. Dist. of the City of N.Y.* (102 AD3d 586 [1st Dept 2013]). In *Cohn*, the petitioner's second annual U-rating was based on "detailed observations in reports prepared by the principal and two assistant principals, describing petitioner's poor performance in class management, engagement of students, and lesson planning" (102 AD3d at 586). He had been provided with a professional development plan at the start of the school year, and he received professional support throughout the year, including several classroom observations by the principal and two assistant principals, all of whom gave "detailed" letters making specific recommendations to improve his instructional deficiencies (*id.* at 587). Thus, although the petitioner in *Cohn* did not receive pre-observation conferences before every classroom observation, as required by the collective bargaining agreement and respondents' manual, Rating Pedagogical Staff Members, the U-rating was rationally based. In comparison, the instant record does not show that petitioner was provided with support, or formal constructive criticism, of any kind.

This case also differs from *Matter of Richards v Board of Educ. of the City Sch. Dist. of the City of N.Y.* (117 AD3d 605 [1st Dept 2014]), where we found no violation of a lawful procedure or substantial right despite the probationary teacher's arguments that she did not receive any mandatory prescreen-

ing conferences before classroom observations, was not provided a curriculum or a professional development plan, did not receive help to manage disciplinary problems in class, and did not receive model lesson plans from another teacher (*id.* at 606). However, the record showed that the petitioner was given three formal observation reports describing her poor performance in class management and engagement of students, and was sent to professional development sessions after receiving her first unsatisfactory report, but her instructional skills did not improve (*id.* at 606-607). In contrast, here respondents have not demonstrated by competent proof that they gave petitioner, who was tenured, any feedback of any kind.

The facts alleged here are more akin to those in *Matter of Kolmel v City of New York* (88 AD3d 527, 527-529 [1st Dept 2011]), where the U-rating given to the probationary teacher in his fourth year of teaching was arbitrary and without a rational basis because the principal who awarded the U-rating did not observe the petitioner's teaching during either of his last two years at the school, and because the year-end report indicated that all but two categories were unsatisfactory even when there was no evidence to support the rating, or the rating was contradicted by evidence in the report.[2] In *Matter of Kolmel*, the respondents' failure to adhere to the regulations tainted the findings of two negative classroom observations cited in the year-end report, two file letters claiming unbecoming conduct, and the year-end U-rating (*id.*).

Similarly, in *Matter of Brown v City of New York* (111 AD3d 426, 427 [1st Dept 2013]), we held that the deficiencies in rating the petitioner "undermined the integrity and fairness of the entire review process." There, the petitioner, in her second year, was observed by the principal, informally and for the first time, at the end of January and was criticized for failing to have a daily plan. She was formally observed about a month later and, although found deficient in other areas, was not provided with the written evaluation until early June; nine days after receiving the formal evaluation, she was formally evaluated for a second time and found, unsurprisingly, to have made no improvement.

In short, the complete absence of constructive criticism and

---

2. Additionally, the principal had stated at the administrative hearing that she did not rely on the file letters in making her tenure recommendation, and the petitioner submitted a statement by a current DOE employee who formerly worked at the high school, that the principal pressured assistant principals to give negative U-ratings without observing the teachers (*Kolmel* at 528-529).

warnings during the entire school year, compounded by the lack of a formal observation and accompanying feedback during the school year, "undermined the integrity and fairness of the process" (*Matter of Kolmel*, 88 AD3d at 529). Accordingly, the judgment should be reversed, and the petition granted to the extent of annulling the U-rating. Concur—Mazzarelli, J.P., Saxe, Feinman and Clark, JJ.